IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACY and DARLENE SLAUGENHAUPT , h/w**<br>797 Lenwood Road<br>Summerville, PA 15864<br><br>*Plaintiffs*<br><br>vs.<br><br>**FIRST ENERGY CORPORATION**<br>76 South Main Street<br>Akron, OH 44308<br><br>and<br><br>**FLORIDA POWER AND LIGHT COMPANY**<br>700 Universe Boulevard<br>Juno Beach, FL 33408<br><br>*Defendants* | **Case No.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

1.      On September 20, 2017, Plaintiff, Tracy Slaugenhaupt, suffered catastrophic electrical contact injuries when Florida Power and Light Company, owners and operators of high voltage lines, energized or re-energized power lines that they had represented to be de-energized while crews were working near or around them, creating an unreasonable hazard.

2. At the time of the accident, Mr. Slaugenhaupt was working to provide "emergency assistance"[1] to Florida Power and Light Company and its above-captioned subsidiaries in repairing the power grid in Florida in the wake of Hurricane Irma.

## I.   PARTIES

3. Plaintiff, Tracy Slaugenhaupt, is an adult individual residing at the above-captioned address.

4. Plaintiff, Darlene Slaugenhaupt, wife of Tracy Slaugenhaupt, is an adult individual residing at the above-captioned address.

5. Defendant, First Energy Corporation ("FirstEnergy"), is a corporation organized and existing under the laws and regulations of the state of Ohio with its principal place of business at the above-captioned address.

6. Defendant FirstEnergy has purposely established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania.

7. At all relevant times, Defendant FirstEnergy acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

8. At all relevant times, Defendant FirstEnergy is the parent corporation and sole shareholder of Plaintiff's employer West Penn Power ("WPP").

9. At all relevant times, Defendant FirstEnergy was responsible for development of the protocols, procedures and safety policies of its subsidiary operating companies, including, but not limited to WPP.

---

[1] See Exhibit A, The Mutual Assistance Agreement, defining the scope of work as "emergency assistance."

10. Defendant, Florida Power and Light Company ("FPL") is a corporation organized and existing under the laws and regulations of the state of Florida with a principal place of business located at the above-captioned address.

11. Defendant FPL has purposely established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous and systematic business activities in Pennsylvania.

12. At all relevant times, Defendant FPL acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

## II.     JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because in the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the Defendants each have certain minimum contacts with the State of Pennsylvania such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

14. Venue in the United States District Court for the Western District of Pennsylvania is proper pursuant to 28 USC§ 1391 because Defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

15. At all relevant times, Defendants FirstEnergy and FPL engaged in substantial, continuous, regular and systematic business in the Commonwealth of Pennsylvania, and specifically within the jurisdiction of this Court.

### III.    FACTS

*The Mutual Assistance Agreement*

16.    Upon information and belief, at all relevant times, FirstEnergy and FPL were members of Edison Electric Institute ("EEI"), a private organization made up of privately owned energy suppliers.

17.    By virtue of their membership in EEI, FirstEnergy and FPL were signatories to EEI's mutual assistance agreement ("the Agreement"), agreeing to assist each other and other EEI members in power restoration efforts, in the event of natural disasters, such as hurricanes.

18.    The Agreement is attached to this Complaint as Exhibit A.

19.    The Agreement, established the procedures by which each utility would assist another in cases of emergencies.[2]

20.    The Agreement allowed a utility company in one state to request the services of a responding utility company in another state.

21.    Both FPL and FirstEnergy, including its subsidiary companies, were signatories to the Agreement.

22.    The Agreement outlines the specific responsibilities of both the Responding Company and the Requesting Company.

23.    The Agreement provides that "Employees of Responding Company shall at all times during the emergency assistance period continue to be employees of Responding Company and shall not be deemed employees of Requesting Company for any purpose."  See Exhibit A at ¶ 3.

---

[2] Various additions to the Agreement have made since the document's origination.  The final changes were made and ratified in October 2014.

24.     The Agreement provides that "All instructions for work to be done by Responding Company's crews shall be given by Requesting Company to Responding Company's supervision[.]"  Id. at ¶ 4.

25.     The Agreement provides that "Responding Company's safety rules shall apply to all work done by their employees."  Id. at ¶ 6.

26.     Upon information and belief, the Agreement was the sole agreement in place between the Defendants and the governing contract at the time of Mr. Slaugenhaupt's accident.

### *Hurricane Irma*

27.     In September 2017, Hurricane Irma struck the state of Florida.  As a result, Florida's power grid was crippled and required weeks of work to return to full operation.

28.     To assist in the restoration, FPL requested the emergency assistance and supply of crews from FirstEnergy, co-signatories to the Agreement.

29.     FirstEnergy was to supply crews of linemen to assist in the restoration of the power grid, and the work was to comply with the provisions of the Agreement.

30.     One of the FirstEnergy crews sent to Florida to assist in the work involved West Penn Power ("WPP") employees, included Plaintiff, Tracy Slaugenhaupt.

31.     During the work, and upon information and belief, FirstEnergy, FPL and their respective agents, servants, workmen and employees were governed by and were required to comply with the terms of the Agreement.

### *Tracy Slaugenhaupt's Accident*

32.     Mr. Slaugenhaupt was ordered by FirstEnergy to work on restoring lines owned and operated by FPL.

33. At the time of the accident, Mr. Slaugenhaupt was employed by WPP, a FirstEnergy operating company ("FEOC") controlled, operated, and managed by FirstEnergy.

34. On September 20, 2017, consistent with the Agreement and instructions he received that morning, Mr. Slaugenhaupt was performing work on the power lines at or near 1621 5th Street, Englewood, FL 34223 ("accident site").

35. Based upon information and belief, branches and tree limbs had fallen along the lines, necessitating the repairs to be performed by Mr. Slaugenhaupt and a WPP crew.

36. At the time of the repairs, Mr. Slaugenhaupt and the crew were informed by its supervisors that the lines upon which they were to be working on were de-energized.

37. Based upon information and belief, at the time of the repairs, Mr. Slaugenhaupt and his crew were receiving instruction from workers employed by FirstEnergy and FPL.

38. Mr. Slaugenhaupt was provided with a WPP chainsaw in order to clear downed branches along the lines.

39. Mr. Slaugenhaupt climbed into an insulated bucket truck with the chainsaw and raised himself up to the area of the power lines that needed to be cleared and/or repaired.

40. Mr. Ritzert, a WPP crew member, remained on the ground, working below the bucket truck.

41. Based upon information and belief, Mr. Slaugenhaupt began clearing downed branches with the chainsaw.

42. While performing his work, Mr. Ritzert heard a "loud snapping noise" and looked up to see Mr. Slaugenhaupt slumped over the bucket.

43. Emergency services were called and EMS transported Mr. Slaugenhaupt to Blake Medical Center with severe electrical shock injuries and electrical burns.

44. Upon information and belief, FirstEnergy and FPL oversaw the emergency line clearance and repair, and were responsible for the safety of all workers clearing the power lines at the project site.

45. FirstEnergy and FPL had a duty to ensure that the project site was free and clear of any and all hazardous and/or dangerous conditions.

46. Upon information and belief, FirstEnergy and FPL employed project overseers for operations, including those operations which were being performed on the subject power lines.

47. Upon information and belief, the Defendants' project overseers were responsible for the protection of all workers working on the subject project.

48. Upon information and belief, FirstEnergy and FPL developed safety policies, instructions and guidelines for the work being completed at the project site at the time of the accident, including emergency line clearance and repair.

49. Upon information and belief, FirstEnergy and FPL knew or should have known that workers, including Mr. Slaugenhaupt, were required to work near or around power lines in completing the emergency line clearance and repair at the project site, and that this work presented a significant risk for serious injury and/or death to the workers, including Mr. Slaugenhaupt.

50. Upon information and belief, FirstEnergy and FPL knew or should have known that re-energizing and/or failing to de-energize power lines when workers were near or around the lines presented an unreasonable risk of serious injury and/or death to the workers, including Mr. Slaugenhaupt.

51. Despite the aforesaid knowledge, FirstEnergy and FPL failed to ensure that the power lines that workers were near or around were properly de-energized or otherwise made safe.

52. Despite the aforesaid knowledge, FirstEnergy and FPL failed to warn workers, including Mr. Slaugenhaupt, that the lines were energized or otherwise unsafe to be near or around.

53. Upon information and belief, FirstEnergy and FPL knew or should have known that workers, including Mr. Slaugenhaupt, were required to use aerial lifts in order to work at a height near or around the power lines to complete their work.

54. Despite the aforesaid knowledge, FirstEnergy and FPL failed to ensure that the power lines that workers were near or around while elevated at a height were properly de-energized or otherwise made safe.

55. Despite the aforesaid knowledge, FirstEnergy and FPL failed to warn workers, including Mr. Slaugenhaupt, elevated at a height that the lines were energized or otherwise unsafe to be near or around.

56. Post-accident dielectric testing confirmed that the bucket truck Mr. Slaugenhaupt was in at the time of the accident was properly insulated.

57. Defendants knew, or in the exercise of a reasonable degree of care, should have known that devastating injuries would result if workers came in direct and/or indirect contact with energized power lines.

58. As a direct and proximate result of the carelessness, and other liability-producing conduct of each of the Defendants, discussed more fully below, Mr. Slaugenhaupt sustained

devastating and catastrophic injuries, including: severe electrical shock injuries, substantial and permanent disfigurement and scarring, psychological injury and trauma, and other injuries the full extent of which is yet to be determined

59. As a further result of Defendants' conduct, Mr. Slaugenhaupt will continue to require medical care for his injuries indefinitely into the future.

60. As a further result of the Defendants' conduct, Mr. Slaugenhaupt has suffered and will continue to suffer severe physical pain, disability, mental anguish, embarrassment and humiliation, some or all of which are permanent in nature.

61. As a further result of the Defendants' conduct, Mr. Slaugenhaupt has suffered a loss of earnings in his employment and an impairment of his earning capacity.

62. Defendants' conduct increased the risk of harm and/or was a factual cause and/or was a substantial factor in causing Mr. Slaugenhaupt's injuries.

63. Defendants are individually and/or jointly and severally liable for Plaintiffs' injuries and damages for the reasons set forth below.

## COUNT I - NEGLIGENCE
## PLAINTIFFS v. FLORIDA POWER AND LIGHT COMPANY

64. All preceding paragraphs of this Complaint are incorporated herein by reference.

65. At all relevant times, FPL owned, operated, controlled and/or maintained the involved powerlines, and controlled and supervised the project work on site, including all safety precautions and procedures on site.

66. FPL employed individuals who were specifically tasked with approving all safety measures of the work being performed on the day of the accident.

67. In connection with their control and supervision of the project, FPL established plans, recommendations, designs, inspection and safety procedures and specifications for the

performance of the work on the project.

68. FPL, having possession and control of the project and the involved power, owed a duty to those persons engaged in the performance of the project, including Mr. Slaugenhaupt, a business invitee, to provide a reasonably safe environment, free from unreasonable and dangerous hazards, within which to perform the project.

69. The negligence, carelessness, and other wrongful and liability producing conduct of the Defendants, their agents, servants and/or employees, which are the proximate cause of the accident described herein and the injuries suffered by Mr. Slaugenhaupt, consisted of but is not limited to the following:

   a. Failing to provide Mr. Slaugenhaupt with a safe place in which to work;

   b. Failing to adequately inspect the project for hazardous conditions;

   c. Breaching their duties under sections 413, 416 and 427 of the Restatement (Second) of Torts including, but not limited to §§ 413, 416, and 427;

   d. Failing to properly train and supervise their employees and employees of sub and independent contractors;

   e. Failing to warn Mr. Slaugenhaupt, a business invitee, of the dangerous and unsafe conditions then and there existing upon the project site, namely live power lines;

   f. Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

   g. Failing to perform and furnish engineering and electrical utility inspection services in conformity with the standard of care then and there prevailing in the respective industries at the time said services were performed and furnished;

   h. Performing and furnishing engineering and electrical utility inspection services in a wholly inadequate and negligent manner;

   i. Failing to properly supervise and inspect the project;

   j. Failing to approve safe and adequate protection measures to guard workers

       from the danger of live power lines, despite knowledge that the failure to do so presented an unreasonable risk of serious injury and/or death to workers on the site, including Mr. Slaugenhaupt;

k.     Failing to cease all work on the project until proper and necessary precautions could be taken to safeguard employees and business invitees, such as Mr. Slaugenhaupt;

l.     Failing to recommend, provide and enforce frequent inspections of the project area and/or equipment that was provided to the workers;

m.     Failing to inform workers of the danger of live power lines;

n.     Failing to de-energize the power lines being cleared as part of the project, despite the knowledge that workers would be near or around the lines;

o.     Failing to otherwise make the power lines safe despite the knowledge that workers would be near or around the lines;

p.     Re-energizing the power lines despite knowing that workers would be clearing downed branches and other debris from the lines;

q.     Failing to inform workers clearing the lines that the lines had been re-energized;

r.     Failing to use insulated conductors;

s.     Failing to place barriers, hoses, sleeves or other protective devices over the power conductors to prevent workers from coming into direct contact or in close proximity with its power lines;

t.     Failing to enact and enforce a policy or program to educate workers of the dangers associated with high voltage power conductors;

u.     Failing to comply with the National Electrical Codes;

v.     Failing to comply with the National Electrical Safety Codes;

w.     Failing to exercise the highest degree of care commensurate with its responsibility as a supplier of electrical power and/or entity responsible for the monitoring of the supply of electrical services;

x.     Failing to formulate, enact and enforce adequate safety programs and measures with respect to high voltage power conductors;

y.     Failing to operate and maintain its high voltage facilities so as to reduce

the hazard to life to the greatest extent practical;

z. Failing to operate and maintain its high voltage facilities in reasonable and safe manner;

aa. Failing to institute adequate safety policies to prevent individuals from coming into direct contact or in close proximity with its power lines when performing repairs;

bb. Failing to install colored line indicators to enhance the conspicuity of the lines;

cc. Failing to adequately warn individuals of the hazardous condition created by power lines running through trees and the hazard presented by setting up and working near the trees through which power lines are running;

dd. Failing to employ proper and adequate safety devices and other safety equipment;

ee. Failing to institute a proper safety and/or management program to ensure protection and safety of out-of-state workers

ff. Failing to place the overhead power conductors underground;

gg. Failing to inspect its high voltage power conductors to determine whether the power conductors were in a reasonably safe condition under the facts and circumstances then and there existing;

hh. Failing to ensure the de-energization the subject high voltage lines before work began;

ii. Failing to ensure that a job-safety analysis was done prior to work commencing;

jj. Failing to establish a line of communication with FirstEnergy to ensure that all lines upon which work was commencing were de-energized; and

kk. Negligently and incorrectly informing WPP employees, including Mr. Slaugenhaupt that the involved lines were de-energized when they were not;

70. As a result of the aforesaid negligence and carelessness of Florida Power and Light Company, Plaintiffs suffered the serious and permanent injuries set forth above.

**WHEREFORE**, Plaintiffs, Tracy and Darlene Slaugenhaupt, claim of Defendants, Florida

Power and Light Company, a sum in excess of Seventy-five Thousand ($75,000.00) Dollars in damages, exclusive of interest and costs, and for delay damages, and bring this action to recover same.

### COUNT II – NEGLIGENCE
### PLAINTIFFS v. FIRST ENERGY CORPORATION

71. All preceding paragraphs of this Complaint are incorporated herein by reference.

72. At all relevant times, FirstEnergy owned, operated, controlled and/or maintained the project site, and controlled and supervised the project work on site, including all safety precautions and procedures on site.

73. FirstEnergy employed individuals who were specifically tasked with approving all safety measures of the work being performed on the day of the accident.

74. In connection with their control and supervision of the project, FirstEnergy established plans, recommendations, designs, inspection and safety procedures and specifications for the performance of the work on the project.

75. FirstEnergy, having possession and control of the project and the involved power, owed a duty to those persons engaged in the performance of the project, including Mr. Slaugenhaupt, a business invitee, to provide a reasonably safe environment, free from unreasonable and dangerous hazards, within which to perform the project.

76. The negligence, carelessness, and other wrongful and liability producing conduct of FirstEnergy, their agents, servants and/or employees, which are the proximate cause of the accident described herein and the injuries suffered by Mr. Slaugenhaupt, consisted of but is not limited to the following:

    a. Failing to provide Mr. Slaugenhaupt with a safe place in which to work;

    b. Failing to adequately inspect the project for hazardous conditions;

    c.      Breaching their duties under sections 413, 416 and 427 of the Restatement (Second) of Torts including, but not limited to §§ 413, 416, and 427;

    d.      Failing to properly train and supervise their employees and employees of sub and independent contractors;

    e.      Failing to warn Mr. Slaugenhaupt, a business invitee, of the dangerous and unsafe conditions then and there existing upon the project site, namely live power lines;

    f.      Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

    g.      Failing to perform and furnish engineering and electrical utility inspection services in conformity with the standard of care then and there prevailing in the respective industries at the time said services were performed and furnished;

    h.      Performing and furnishing engineering and electrical utility inspection services in a wholly inadequate and negligent manner;

    i.      Failing to properly supervise and inspect the project;

    j.      Failing to approve safe and adequate protection measures to guard workers from the danger of live power lines, despite knowledge that the failure to do so presented an unreasonable risk of serious injury and/or death to workers on the site, including Mr. Slaugenhaupt;

    k.      Failing to cease all work on the project until proper and necessary precautions could be taken to safeguard employees and business invitees, such as Mr. Slaugenhaupt;

    l.      Failing to recommend, provide and enforce frequent inspections of the project area and/or equipment that was provided to the workers;

    m.      Failing to inform workers of the danger of live power lines;

    n.      Failing to enact and enforce a policy or program to educate workers of the dangers associated with high voltage power conductors;

    o.      Failing to formulate, enact and enforce adequate safety programs and measures with respect to high voltage power conductors;

    p.      Failing to institute adequate safety policies to prevent individuals from coming into direct contact or in close proximity with its power lines when

performing repairs;

q. Failing to adequately warn individuals of the hazardous condition created by power lines running through trees and the hazard presented by setting up and working near the trees through which power lines are running;

r. Failing to employ proper and adequate safety devices and other safety equipment;

s. Failing to establish proper policies and procedures for post-hurricane clean up to protect the safety of WPP employees, including Mr. Slaugenhaupt;

t. Failing ensure that the WPP employees sent to Florida had sufficient and proper training, specific to post-hurricane restoration;

u. Failing ensure their employees and agents sufficient and proper training, specific to post-hurricane restoration;

v. Failing to ensure the de-energization the subject high voltage lines before work began;

w. Failing to ensure that a job-safety analysis was done prior to work commencing;

x. Failing to establish a line of communication with FPL to ensure that all lines upon which work was commencing were de-energized; and

y. Negligently and incorrectly informing WPP employees, including Mr. Slaugenhaupt that the involved lines were de-energized when they were not;

77. As a result of the aforesaid negligence and carelessness of FirstEnergy, Plaintiffs suffered the serious and permanent injuries set forth above.

**WHEREFORE**, Plaintiffs, Tracy and Darlene Slaugenhaupt, claim of Defendant, FirstEnergy Corporation, a sum in excess of Seventy-five Thousand ($75,000.00) Dollars in damages, exclusive of interest and costs, and for delay damages, and bring this action to recover same.

## COUNT III – LOSS OF CONSORTIUM
## DARLENE SLAUGENHAUPT v. ALL DEFENDANTS

78. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though set forth fully at length.

79. At all relevant times, Plaintiff Darlene Slaugenhaupt was/is the wife of Plaintiff Tracy Slaugenhaupt and, as such, is entitled to his society companionship and services.

80. By reason of the Defendants' carelessness and negligence, Darlene Slaugenhaupt has suffered the following damages:

   a. She has suffered the loss of consortium and has been deprived of her husband's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance; and

   b. She has been and will be required to expend large sums of money for her husband's medical care and attendant services.

**WHEREFORE**, Plaintiff, Darlene Slaugenhaupt, claims of Defendants, FirstEnergy Corporation and Florida Power and Light Company, a sum in excess of Seventy-five Thousand ($75,000.00) Dollars in damages, exclusive of interest and costs, and for delay damages, and brings this action to recover same.

Respectfully submitted,

By: _/s/David L. Kwass_
Robert J. Mongeluzzi, Esquire
David L. Kwass, Esquire
Elizabeth A. Bailey, Esquire
Saltz, Mongeluzzi, Barrett & Bendesky, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282
Fax (215) 496-0999
rmongeluzzi@smbb.com
dkwass@smbb.com
ebailey@smbb.com

Date: 9/10/19